

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281-1022

NEW YORK
REGIONAL OFFICE

May 24, 2021

Via ECF
The Honorable Paul A. Engelmayer
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:  SEC v. AT&T Inc., et al., 21 Civ. 01951 (PAE) (S.D.N.Y.)

Dear Judge Engelmayer:

      Plaintiff Securities and Exchange Commission ("SEC") and Defendants AT&T Inc. ("AT&T"), Christopher C. Womack, Kent D. Evans, and Michael J. Black (collectively, "Defendants") respectfully write to address the topics in the Court's May 10, 2021 Notice of Initial Pretrial Conference scheduled for May 28, 2021 at 10:00 a.m.

### I.    Brief Description of the Case[1]

    A.    Plaintiff's Statement

      The SEC alleges that Defendant AT&T, aided and abetted by Defendants Womack, Evans, and Black (the "Individual Defendants")—executives in its Investor Relations ("IR") Department—repeatedly violated Regulation FD (Fair Disclosure) in March and April of 2016. Regulation FD is an SEC rule that prohibits the selective disclosure of material nonpublic information to, among others, securities analysts. According to the SEC, Defendants disclosed AT&T's projected and actual financial results during phone calls the Individual Defendants held with equity stock analysts from approximately 20 Wall Street firms on a one-on-one basis. The factual basis for the SEC's claims are as follows.

      In early March 2016, Defendants learned that steeper-than-expected declines in smartphone sales would cause AT&T's consolidated gross revenue for the first quarter of 2016 to fall short—by more than $1 billion—of analysts' consensus estimates. These declines were caused in part by a record low "equipment upgrade rate" (i.e., the rate at which existing customers purchased new smartphones). Senior AT&T executives instructed the Individual Defendants to speak to analysts about their estimates to "walk the analysts down"—i.e., to induce the analysts to reduce their individual estimates. The goal was to cause enough analysts to lower their estimates by sufficient amounts so that the consensus revenue estimate would fall to the level that AT&T expected to report to the public. In other words, AT&T would be able to "meet" or "beat" the consensus estimates instead of "missing" them.

---

[1] In setting forth their respective positions in this joint submission, the parties are not adopting or conceding any of the factual allegations or legal arguments made by the other parties.

Between March 9 and April 26, 2016, the Individual Defendants called approximately 20 separate analyst firms and spoke to analysts to induce them to lower their revenue estimate. During these calls, the Individual Defendants disclosed at least AT&T's projected or actual equipment upgrade rate, its projected or actual equipment revenue amount (which they presented as a percentage decrease compared with the first quarter of 2015), or both. Defendants did not make any public disclosures of the equipment upgrade rate or equipment revenue at the same time as the disclosure to the analysts. This conduct violated Regulation FD.

The Individual Defendants knew or recklessly disregarded that the information they provided to the analysts was both material and nonpublic. Among other things, AT&T's Regulation FD training materials informed the Individual Defendants that AT&T's revenue and smartphone sales information were types of information generally considered material to investors. Further, the Defendants knew that the information that they disclosed would not be public until AT&T publicly reported its first quarter results on April 26, 2016. Black went so far as to falsely represent to analysts that he was presenting them with publicly available consensus estimates while in fact providing them with AT&T's internal projected or actual results. Despite Defendants' position that the general trend of decreased upgrade rates was known, here defendants selectively disclosed AT&T's projections and actual results for those metrics—not merely a general trend.

Ultimately, each of the analyst firms that received these calls promptly adjusted their revenue estimates, resulting in a reduced consensus estimate that AT&T narrowly beat when it announced its quarterly earnings on April 26, 2016.

B.     Defendants' Statement

Defendants did not selectively disclose material, nonpublic information to any third party. Defendants dispute that any of the information alleged by the SEC in its complaint was material or non-public.

The essence of the SEC's case --- declining equipment revenues and upgrade rates – was a widely known trend to the investing public.  Like other wireless companies, AT&T phased out its smartphone subsidy program during the 2014-2016 time period.  Customers predictably reacted to the phase-out of new-phone subsidies by keeping their old phones longer.  However, AT&T also made clear to investors that proceeds from phone sales was "pass-through" revenue and thus earnings-neutral.  As such, phone sales were not a material driver of AT&T's business.

AT&T disclosed this declining upgrade trend in multiple public statements <u>before</u> the mid-March and April 2016 analyst calls on which this suit is based.  During its January 26, 2016 fourth-quarter earnings call, AT&T disclosed "lower equipment sales" for 2015 "as customers chose to hold onto their smartphones for a longer period of time" and stated that "equipment revenues were down more than $700 million, mostly due to lower upgrade volumes."  Even though this shortfall caused AT&T to miss consensus revenue forecasts by $700 million, AT&T's stock price did not fall, as the market plainly understood the immaterial earnings-neutral nature of smartphone sales.

In addition, on March 9, 2016, before the analyst calls at issue, AT&T's then-CFO publicly reaffirmed that the same slower-upgrade trend was still occurring, and that he "wouldn't be surprised" to see the slowdown continue in the first quarter of 2016.  These statements

2

communicated to the market that AT&T expected a similar year-over-year decline in equipment revenue and upgrade rates during the first quarter of 2016 as occurred in the prior quarters. Defendants therefore had a reasonable basis for believing the equipment revenue and upgrade rate information at issue was both immaterial and already public.

Moreover, applying the same year-over-year trends in the prior two quarters to the first quarter of 2016 would yield substantially the same upgrade rate and equipment revenue forecasts that AT&T allegedly selectively disclosed to the analysts. It is therefore not surprising that no analyst testified during the SEC's multi-year investigation that they believed any material nonpublic information was selectively disclosed. Further, actual quantitative economic evidence confirms the immateriality of the information given the absence of a stock price drop following prior equipment revenue shortfalls and the absence of any meaningful earnings impact. These and other facts show why the SEC also cannot satisfy the "knowing or reckless" scienter requirement, which requires that the judgment about whether the information was material or nonpublic must be so indefensible that "no reasonable person under the circumstances would have made the same determination."[2]

Simply put, this suit represents an extreme overreach that violates the Commission's assurances to issuers, analysts, and the public at large that it would not pursue "close" cases, and this case is not even close. The SEC's Complaint also raises significant First and Fifth Amendment concerns, exceeds the SEC's statutory rulemaking authority, and will chill productive and commonplace communications with analysts that benefit investors.

## II. Contemplated Motions

Plaintiff's Statement: The SEC anticipates filing a motion for summary judgment as to certain of the defenses raised by Defendants and possibly on the SEC's claims following the close of discovery.

Defendants' Statement: Defendants anticipate filing a motion for summary judgment as to all of the SEC's claims following the close of discovery. Defendants may move for judgment on the pleadings pursuant to Rule 12(c) on all of the SEC's claims.

## III. Prospect for Settlement

Plaintiff's Statement: The SEC has discussed settlement with the Defendants and continues to be willing to discuss settlement with them.

Defendants' Statement: Defendants maintain that they have not violated Regulation FD and have no projections with regard to settlement.

---

[2] *See* Final Rule: Selective Disclosure and Insider Trading, Exchange Act Release No. 34-43154, 65 Fed. Reg. 51,716, at 51,718 (Aug. 15, 2000); 17 C.F.R. §§ 240.101(a), (d).

Respectfully submitted,

*/s/ Victor Suthammanont*

Victor Suthammanont
Senior Trial Counsel
suthammanontv@sec.gov
(212) 336-5674

*Counsel for the SEC*

*/s/ Richard S. Krumholz*
Richard S. Krumholz
Norton Rose Fulbright US, LLP
richard.krumholz@nortonrosefulbright.com
(214) 855-8022

Randall W. Jackson
Willkie Farr & Gallagher LLP
rjackson@willkie.com
(212) 728-8216

*Counsel for AT&T Inc.*

*/s/ Jeffrey M. Tillotson*
Jeffrey M. Tillotson (*pro hac vice*)
Tillotson Law
jtillotson@tillotsonlaw.com
(214) 382-3040

Leslie C. Thorne
Haynes and Boone, LLP
leslie.thorne@haynesboone.com
(212) 835-4848

*Counsel for Christopher C. Womack,
Kent D. Evans, and Michael J. Black*

cc:     All Counsel of Record (via ECF)