UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                **Plaintiff,**

      -- against --

**AT&T, INC.,
CHRISTOPHER C. WOMACK,
KENT D. EVANS, and
MICHAEL J. BLACK,**

                **Defendants.**

No. 21 Civ. 1951 (PAE)

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
## (LETTER ROGATORY)

The United States District Court for the Southern District of New York presents its compliments to the Ontario Superior Court of Justice in Toronto in the Province of Ontario, Canada, and requests judicial assistance to compel the attendance of witnesses at oral depositions and the production of documents to be used in a civil proceeding before this Court in the above-captioned matter. This Court has the authority to grant this Letter Rogatory under 28 U.S.C. § 1781(b)(2).

This Court requests the assistance described herein as necessary in the interests of justice. Plaintiff United States Securities and Exchange Commission ("SEC") and Defendants Christopher Womack ("Womack"), Kent Evans ("Evans"), and Michael Black ("Black") (collectively the "Individual Defendants," and together with the SEC, the "Requesting Parties") need documents and information from The Bank of Nova Scotia, d/b/a Scotiabank and its subsidiary Scotia Capital Inc. – Canada ("Scotiabank"), and testimony from Scotiabank employees or former employees Jeff Fan ("Fan"), Moby Parkhani ("Parkhani"), and Matthew Lee ("Lee"). This Court requests that the Ontario Superior Court of Justice permit and, if

1

necessary, compel (i) the production of documents from Scotiabank and (ii) the appearance of Fan, Parkhani, and Lee to give videotaped deposition testimony for use by the Requesting Parties and this Court in the full resolution of this action.

## I. Summary of Action

The SEC filed this action on March 5, 2021, in the United States District Court for the Southern District of New York, against AT&T, Inc. ("AT&T") and the Individual Defendants (collectively the "Defendants"). The SEC alleges that defendant AT&T, aided and abetted by Womack, Evans, and Black, made selective disclosures of AT&T's material and non-public information to certain securities analysts in violation of Section 13(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Regulation FD, 17 C.F.R § 243.100 et seq., thereunder. The SEC's Complaint is annexed hereto as Exhibit A. The Defendants deny those allegations.

***The SEC's Claim.*** More specifically, the SEC alleges that AT&T, aided and abetted by Womack, Evans, and Black, who the SEC characterize as executives in its Investor Relations Department, repeatedly violated Regulation FD by disclosing AT&T's projected and actual financial results during phone calls Womack, Evans, and Black held with equity stock analysts from approximately 20 Wall Street firms—including Scotiabank—on a one-on-one basis. After learning that smartphone sales were lower than expected and that AT&T's first quarter revenue for 2016 would therefore fall short of analysts' estimates, AT&T's Chief Financial Officer directed the Investor Relations Department to work with analysts on estimates that were too high. The SEC alleges that Womack, Evans, and Black were instructed by the Director of Investor Relations to induce analysts to lower their projections so that AT&T would not miss their revenue estimates for the first quarter of 2016. Between March 9 and April 26, 2016, Womack, Evans, and Black called approximately 20 separate analyst firms, including

Scotiabank. During these calls, the SEC claims Womack, Evans, and Black intentionally disclosed material nonpublic information regarding AT&T's results to date. Depending on the firm and the date of the call, the SEC alleges that Womack, Evans, and Black disclosed AT&T's projected or actual equipment upgrade rate, its projected or actual wireless equipment revenue amount (presented as a percentage decrease compared with the first quarter of 2015), or both.

The Commission seeks a judgment from the Court: (a) enjoining Defendants from engaging in future violations, or aiding and abetting violations of, Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Regulation FD, 17 C.F.R. § 243.100, et seq.; and (b) ordering Defendants to pay a civil money penalty pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

***The Individual Defendants' and AT&T's Position.*** The Individual Defendants (who characterize themselves as employees, not executives) and AT&T vigorously dispute the SEC's contentions and deny that they disclosed any material non-public information on the analyst calls at issue in this case or otherwise, including with Scotiabank, let alone acted intentionally or recklessly as required by Regulation FD. Defendants also contend that the information the SEC alleges they disclosed was not material, in any event. Defendants Black's Answer to the SEC's Complaint, which is representative of the other defendants' answers, is attached here as Exhibit B.

The parties are currently engaged in discovery. On June 3, 2021, this Court issued a case-management order requiring the parties to complete discovery by January 31, 2022.

The corporate entity named in this Request, Scotiabank, is headquartered in Toronto in the Province of Ontario, Canada, and has within its possession, custody, or control evidence that

3

is highly relevant to the parties' claims and defenses. The individual analysts described in this Request are also believed to reside in the Toronto area.

## II. **Assistance Required**

The assistance of the Ontario Superior Court of Justice in Toronto, Ontario, Canada is requested because the Scotiabank witnesses and the documents described below are relevant to discovery and necessary for the trial of this case. The Court is familiar with the facts and allegations in this case, and, based on the Court's knowledge of the case, the evidence and information requested herein is relevant to the issues in the case and will likely be used at trial.

The documents sought from Scotiabank and the testimony of Fan, Parkhani, and Lee are relevant not only to discovery in this case, but are also necessary for use at the trial, and the evidence is not otherwise obtainable by this Court at the trial through this Court's compulsory process. Thus, the evidence so obtained will be used by the parties at the trial itself. The evidence sought in Ontario by this Letter Rogatory is necessary for this Court to do justice in this case. Therefore, this Court respectfully requests, in the interests of justice, that the Ontario Superior Court issue appropriate orders, subpoenas, or other compulsory process necessary to compel Scotiabank to produce the documents described below, and the witnesses to appear and testify, concerning any issue relevant to the case before this Court.

The Requesting Parties reached out to Scotiabank and sought to reach an agreement to avoid this process, but so far Scotiabank has not agreed and indicated that formal letters rogatory must be filed first. The Requesting Parties intend, if possible, to contact counsel for Scotiabank, Fan, Parkhani, and Lee with the goal of agreeing upon, if possible, procedures for the production of documents and taking of evidence. The Requesting Parties hope to present the Ontario Superior Court of Justice, insofar as possible, with a proposed draft order for enforcement of this

Letter Rogatory that will not be opposed and, in any event, limiting insofar as is possible any areas of disagreement that would require resolution by the Ontario Superior Court of Justice.

This Court further requests that the Ontario Superior Court cause: the depositions of individual witnesses to be transcribed by a qualified court reporter; the transcript of the deposition to be authenticated; and the authenticated records to be delivered to counsel for the parties in the litigation before this Court. It is also requested that the parties be granted the option to have the testimony videotaped by a qualified videographer. The original transcript of the testimony, and if the testimony is videotaped, the videotapes, should be returned to the parties for retention and production at the time of trial.

Pursuant to 28 U.S.C. § 1782, this Court stands ready to extend similar assistance to the Courts of Canada in like cases.

### III. Documents and Witnesses Requested -- Procedures

This Court respectfully requests that the Ontario Superior Court of Justice:

1. Cause Scotiabank to produce the documents requested in the Witnesses and Documents section below at a time to be agreed upon by Scotiabank and the Requesting Parties, but not later than November 15, 2021;

2. Cause Fan to be summoned to attend an examination under oath before a person authorized to administer oaths at such place as may be agreed upon by the witness and the Requesting Parties, at a time be to be agreed upon by the witness and the Requesting Parties, including by remote video, but no later than the deadline set for the completion of fact discovery in the U.S. action;

3. Cause Parkhani to be summoned to attend an examination under oath before a person authorized to administer oaths at such place as may be agreed upon by the witness and the Requesting Parties, at a time be to be agreed upon by the witness and the

Requesting Parties, including by remote video, but no later than the deadline set for the completion of fact discovery in the U.S. action;

    4.    Cause Lee to be summoned to attend an examination under oath before a person authorized to administer oaths at such place as may be agreed upon by the witness and the Requesting Parties, at a time be to be agreed upon by the witness and the Requesting Parties, including by remote video, but no later than the deadline set for the completion of fact discovery in the U.S. action;

    5.    Cause Fan, Parkhani, and Lee to be examined by counsel for the parties to this action on the relevant subject matter within their personal knowledge;

    6.    Permit the examinations to be governed by the *Canada Evidence Act*, the *Ontario Evidence Act*, and the Ontario Rules of Court;

    7.    Permit Fan, Parkhani, and Lee to refuse to give evidence only insofar as they have a privilege or duty to refuse to give evidence under the laws of Canada or the United States of America, or pursuant to the order or direction of the Ontario Superior Court of Justice; and

    8.    Permit the examination to be videotaped and a verbatim transcript of the examination to be taken.

### IV.   Reimbursement for Costs

Conduct money to be paid to Fan, Parkhani, and Lee in accordance with the witness allowance fee schedule of the Ontario Superior Court of Justice will be borne by the Requesting Parties in an allocation to be agreed upon by those parties or, if necessary, determined by this Court.

### V.   Application of Stipulation and Order Governing the Production and Exchange of Confidential Information

Any evidence provided by Scotiabank, Fan, Parkhani, and Lee pursuant to an order enforcing this Letter Rogatory is Discovery Material within the meaning of the Stipulation and Order Governing the Production and Exchange of Confidential Information entered in the U.S. action (the "Protective Order," a copy of which is annexed hereto as Exhibit C). Scotiabank, Fan, Parkhani, and Lee are each a Producing Party within the meaning of the Protective Order, and shall have all of the rights and protections accorded thereto under the Protective Order.

## VI. List of Counsel

For the convenience of the Ontario Superior Court of Justice, a list of the counsel for the Requesting Parties is attached hereto as Exhibit D.

## WITNESSES AND DOCUMENTS REQUESTED

### I. Definitions And Instructions

#### A. Instructions

This request calls for the production of documents in the possession, custody, or control of the witness.

Responsive documents should be produced as kept in the ordinary course of business, with proper document breaks and boundaries, or shall be organized and labeled to correspond with the Requests to which the documents are responsive. All attachments and appended or embedded links or files should be produced if any are responsive to any of the Requests. If a witness is not producing documents with respect to any Request, the witness should so state in writing.

If any requested documents are maintained in digital, electronic, and/or imaged form, production of a copy of the electronically stored information in digital, electronic, and/or imaged form is hereby requested in electronic format described in Exhibit E:

**B.     Definitions**

1. "Scotiabank," "You" or "Your" means The Bank of Nova Scotia, or any of its subsidiaries, including Scotia Capital Inc. – Canada, divisions, affiliates, predecessors, successors, present or former officers, managers, employees, directors, agents, attorneys, accountants, auditors, advisors, and all other persons acting or purporting to act on its behalf.

2. "AT&T" means AT&T Inc. or any of its subsidiaries, divisions, affiliates, predecessors, successors, present or former officers, managers, employees, directors, agents, attorneys, accountants, auditors, advisors, and all other persons acting or purporting to act on its behalf.

3. "Complaint" means the complaint filed by the SEC in this action, *Securities and Exchange Commission v. AT&T Inc., et al.*, No. 21-cv-01651 (PAE) (S.D.N.Y.), attached hereto as Exhibit A.

4. "Investigation" means the investigation undertaken by the SEC concerning AT&T captioned *In the Matter of Certain Issuer-Analyst Communications* (File No. NY-9550).

5. "Regulation FD" means the regulation codified at 17 CFR § 243.100 *et seq.*, known as Regulation Fair Disclosure.

6. "Document" includes all written, typed, recorded, or graphic matter, however produced or reproduced, of any kind or description, including originals, non-identical copies and drafts, and all other materials discoverable under Federal Rules of Civil Procedure 26. This definition also includes papers, books, letters, correspondence, e-mails, instant messages, faxes, contracts, agreements, notes, memoranda, inter-office communications, messages, notices, transcripts, meeting minutes, reports, analyses, investigations, recommendations, instructions, opinions, summaries, charts, computer printouts, statements, transcripts, receipts, account statements, evaluations, business records, accounting records, financial statements, billing

records, tax records, tax returns, ledgers, invoices, drafts, desk calendars, appointment books, diaries, date books, organizers, journals, electronically stored information, computer disks or tapes, computer input or output, files, filings, folders, lists, schedules, and all communicative materials of any kind (to include data stored in a computer or other electronic device, data stored on removable magnetic or optical media, backup copies of data, digitized pictures and video, digitized audio, and voicemail).

7. The term "communication" means any written, oral or mechanical transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether formal or informal, including email or other computerized mail, text messages, instant messages, Bloomberg messages, correspondence, memoranda, notes, facsimiles, diaries, telephone conversations (whether in recorded form or otherwise), in-person meetings, Documents or files in computer format, and any written Documents concerning any such communications.

8. The term "concerning" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting on, comprising, concerning, confirming, considering, constituting, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, negating, pertaining to, qualifying, referring to, regarding, relating to, relevant to, representing, revoking, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

9. The terms "including," "include," or "includes" are used in their broadest sense and are not meant to be limiting. Any list following these terms contains illustrative examples of the types of documents responsive to the request, but the list is without limitation and does not

constitute an exclusive, all-encompassing, or exhaustive listing of every type of document responsive to the request.

10. The words "and" "or," and "any" are intended to be construed as necessary to bring within the scope of these requests for production any documents or information that otherwise might be construed to be outside the scope of these requests. Use of a singular noun shall be construed to include the plural noun and use of a plural noun shall be construed to include the singular noun. The use of a verb in any tense shall be construed as the use of that verb in all other tenses whenever necessary to bring within the scope of this Letter Rogatory documents or information that might otherwise be construed to be outside the scope of this Letter Rogatory.

11. "Person" means natural persons, governments or agencies thereof, quasi-public entities, corporations, associations, partnerships, ventures, and any other form of organization. Whenever reference is made to a person, it includes any and all of such person's employees, agents, attorneys, consultants, other representatives, or others acting on that person's behalf.

## II. Witnesses And Documents

Scotiabank is a banking and financial services company. Among the services it provides are market and financial analysis of issuers of publicly traded securities, including AT&T, Inc., in the form of analyst research reports. Research analysts will typically include their projections of issuers' financial performance and explanations of their projections in their reports.

In the first quarter of 2016, Scotiabank analysts, including Fan, Parkhani, and Lee, began to publish estimates of AT&T's quarterly results, including AT&T's projected total revenue. In April 2016, before AT&T reported its first quarter earnings, Defendant Black had a telephone call with some or all of the Scotiabank analysts, after which Scotiabank published a research report estimating AT&T's first quarter 2016 revenue would be $40.384 billion. The SEC alleges

that during that telephone call, Defendant Black improperly disclosed material nonpublic information to Scotiabank. Defendant Black and AT&T deny those allegations.

Consequently, Scotiabank, and its analysts Fan, Parkhani, and Lee, have knowledge of relevant facts concerning the substance of communications with Defendants AT&T and Black including: what information was conveyed in the April 8, 2016 telephone call concerning AT&T's first quarter 2016 financial performance; changes to AT&T's business model for its wireless business; the importance of AT&T's wireless equipment and total revenue numbers; and overall knowledge of AT&T, the telecom industry, wireless trends at the time, and how they arrived at their estimate of first quarter revenue for AT&T.

### A.     Third Party Witness Scotiabank

Scotiabank
Scotia Plaza
44 King Street West
Toronto, Ontario, Canada M5H 1H1

#### Documents Requested from Scotiabank

Any documents or communications in Scotiabank's care, possession, or control for the period between January 1, 2016, through September 30, 2016, concerning: AT&T's equipment upgrade rates (i.e., the rate at which existing customers purchased new smartphones); AT&T's revenue from new smartphone sales; AT&T's earnings; and/or AT&T's policies relating to subsidizing the cost of new smartphones for customers, including but not limited to communications with AT&T concerning the foregoing subject matters; any notes and/or recordings concerning such communications; any internal documents or communications concerning such matters; all draft reports by an equity analyst regarding AT&T; and all final reports issued to the public by an equity analyst regarding AT&T.

All draft and final models used by Scotiabank, including its equity analysts, to estimate AT&T's financial results, including but not limited to any models concerning AT&T's total revenues, earnings, wireless equipment revenue, and wireless equipment upgrade rate (i.e., the rate at which existing customers purchases new smartphones) for the period between January 1, 2015, through December 31, 2017.

All communications between Scotiabank and Christopher C. Womack, Kent D. Evans, and/or Michael J. Black (including communication with one or any combination of the three individuals) concerning (and documents concerning) such communications, including but not limited to any emails, notes, and telephone records between January 1, 2016, and May 1, 2016.

All communications between Scotiabank and Defendants concerning matters raised in the Complaint and Answer or AT&T's actual or projected financial results, including but not limited to AT&T's total revenues, earnings, wireless equipment revenue, and wireless equipment upgrade rate, and all documents concerning such communications from January 1, 2016, to May 1, 2016.

All communications between Scotiabank and Defendants concerning other analyst firms' and/or consensus estimates of AT&T's actual or projected financial results, including but not limited to AT&T's total revenues, earnings, wireless equipment revenue, and wireless equipment upgrade rate, and all documents concerning such communications from January 1, 2016, to May 1, 2016.

### B. Third Party Witness Jeff Fan

Jeff Fan
c/o Scotiabank
Scotia Plaza
44 King Street West
Toronto, Ontario, Canada M5H 1H1

Witness Fan is to provide testimony in accordance with the procedures stated above.

C. **Third Party Witness Moby Parkhani**

Moby Parkhani
c/o Scotiabank
Scotia Plaza
44 King Street West
Toronto, Ontario, Canada M5H 1H1

Witness Parkhani is to provide testimony in accordance with the procedures stated above.

D. **Third Party Witness Matthew Lee**

Matthew Lee
c/o Scotiabank
Scotia Plaza
44 King Street West
Toronto, Ontario, Canada M5H 1H1

Witness Lee is to provide testimony in accordance with the procedures stated above.

*Paul A. Engelmayer*
THE HON. PAUL A. ENGELMAYER
UNITED STATES DISTRICT JUDGE

DATE: October 5, 2021