**NORTON ROSE FULBRIGHT**

March 1, 2022

**BY ECF**

**Richard S. Krumholz**
**Global Head of Litigation and Disputes**

Direct line +1 214 855 8022
richard.krumholz@nortonrosefulbright.com

The Honorable Paul A. Engelmayer
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *SEC v. AT&T Inc., et al.,* No. 21 Civ. 01951 (PAE) (S.D.N.Y)

Dear Judge Engelmayer:

Defendant AT&T Inc. ("AT&T") requests a pre-motion conference on AT&T's proposed motion for summary judgment because: (i) there is no genuine issue of material fact that Defendants did not selectively disclose with scienter material nonpublic information to analysts in violation of Section 13(a) of the Securities Exchange Act and Regulation FD (collectively, "Regulation FD"); (ii) there is no statutory authority for Regulation FD; (iii) Regulation FD is unconstitutional under the First and Fifth Amendments; and (iv) Regulation FD's "duty of trust and confidence" exemption renders the rule inoperable, unworkable, and self-defeating as a matter of law and as applied to the pleadings and conclusive evidence herein. AT&T also seeks to move for judgment on the pleadings under Rule 12(c) on each of these grounds, as the allegations in the Complaint do not plausibly show a viable claim. AT&T further joins and incorporates by reference the individual defendants' grounds for summary judgment.

**AT&T Did Not Violate Regulation FD.**   The SEC alleges that Defendants selectively disclosed to analysts material nonpublic information regarding wireless equipment revenue and handset upgrade rates. The record proves the opposite. First, and setting aside that AT&T did not disclose this information, these metrics are immaterial to a diversified wireless services, communications, broadband, and entertainment company like AT&T. Second, these metrics' downward trend was widely known by the analyst community and the investing public. Finally, any disclosure lacked the requisite intent or recklessness. As in *Siebel Systems,* the only prior Regulation FD primary liability case litigated to judgment,[1] the allegations and evidence here do not show a material or nonpublic statement, and are certainly insufficient to find any alleged disclosures were made with the requisite scienter.

1.   **The information allegedly disclosed was not material.**   There is no competent evidence that unsubsidized handset sales for 1Q 2016 had a material economic impact on AT&T's overall business, earnings, or future net cash flows **even in the aggregate**,[2] let alone the

---

[1] *SEC v. Siebel Systems, Inc.*, 384 F. Supp. 2d 694, 705 (S.D.N.Y. 2005) (dismissing Regulation FD claim and criticizing "nit-picking" of company's public statements).

[2] AT&T's unsubsidized "Next" program – which accounted for the overwhelming majority of phone sales to consumers in 1Q 2016 – reflected an **aggregate** 1Q 2016 net loss of just $48,479,863 when all relevant inflows and outflows are considered, including imputed and accrued interest, activation fees, and bad debt reserves. This amount is trivial in comparison to AT&T's

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.



March 1, 2022
Page 2

much narrower sliver of those earnings or net cash flows reflected by the difference between analyst forecasts before and after the information was allegedly selectively disclosed. Unsurprisingly, not one analyst has testified that he/she believed he/she received material nonpublic information. Further, while the SEC alleges AT&T was motivated to tamp down analysts' revenue expectations because it had missed consensus revenue forecasts in prior quarters, there is no competent evidence that those earlier misses materially impacted AT&T's stock price, including a 4Q 2015 revenue miss caused by a publicly disclosed $700 million, 14.9% year-over-year drop in wireless equipment revenue.

2. **The information allegedly disclosed was public.** On March 9, 2016—before the analyst calls at issue—AT&T's then-CFO publicly stated that AT&T saw "**a slowdown in the handset upgrade cycle or the total sales**" during "the fourth quarter" of 2015; that he "**wouldn't be surprised to see that continue**" (referring to the "slowdown"), but that the slowdown would have "**very little impact at all on profitability.**" Deutsche Bank immediately published a research report that day stating that "revenue headwinds like lower handset volumes . . . appear to have continued in early 2016" based on the CFO's remarks. "Continuing" the same 14.9% year-over-year decline from 4Q 2015 to 1Q 2016 would yield materially the same equipment revenue estimates that were allegedly disclosed, with a similar outcome when publicly disclosed lower 2015 upgrade rates are extrapolated forward. A reasonable analyst or investor could thus have calculated the allegedly disclosed metrics from public information.

3. **Any disclosure was not intentional or reckless.** Regulation FD requires an **intentional** or **reckless** disclosure of information. If the evidence supplies an objectively reasonable basis for Defendants to believe the information was not material **or** nonpublic, a reasonable jury cannot find that Defendants "knew" or were "reckless in not knowing" the information was both material and nonpublic.[3] The SEC's Adopting Release for Regulation FD confirms that "liability will arise **only** if no reasonable person under the circumstances would have made the same determination." Even assuming *arguendo* the alleged disclosures occurred (which Defendants deny), Defendants at the very least had an objectively reasonable basis to believe the information was immaterial or already public because (among other things) (i) previous equipment revenue misses did not impact the stock price, (ii) the impact of equipment revenue on earnings is insignificant at best, (iii) wireless equipment sales are not core to AT&T's overall business, and (iv) the CFO's March 9 public statements.

---

$3.8 billion in net income that quarter, particularly the portion of this amount attributable to the lower phones sales forecasts at issue.

[3] *See* 17 C.F.R. 243.101(a); *In re Bank of Am. AIG Disclosure Secs. Litig.*, 980 F. Supp. 2d 564, 586 (S.D.N.Y. 2013) (holding that if "reasonable minds could differ" on whether information was already public, it "precludes scienter because reckless conduct must be 'highly unreasonable. . . .'").



March 1, 2022
Page 3

**Lack of Statutory Authority, Inoperability, and Unconstitutionality.** As set forth in AT&T's Fourth through Tenth Defenses (Doc. #30), Regulation FD lacks statutory authority and violates the First and Fifth Amendments. The Supreme Court previously held that the SEC may not formulate "an absolute equal information rule" "'absent some explicit evidence of congressional intent.'"[4] There is no "explicit evidence of congressional intent" in any federal securities statute for Regulation FD's promulgation. Commentators have also questioned Regulation FD's constitutionality, both facially and as applied to different facts.[5] The defendants in *Siebel Systems* mounted a vigorous statutory authority challenge as well as a facial challenge to Regulation FD under the First and Fifth Amendments. Judge Daniels did not reach these challenges in dismissing the Regulation FD claim on the merits, but Regulation FD's vulnerability on these grounds has not diminished. The free speech and due process challenges are particularly strong as applied to the facts of this case, as the SEC has contradicted its own public assurances not to bring enforcement actions under Regulation FD except in clear-cut cases where the information was plainly material and nonpublic. Applying Regulation FD to the facts of this case, which involves immaterial and already-public information, will improperly chill lawful speech.

Lastly, under the SEC's own language, the individual Defendants cannot be found to have acted on behalf of AT&T if their disclosures amount to a "breach of a duty of trust or confidence" to the issuer, here AT&T. See 17 C.F.R. § 243.101(c). But the government as a matter of law cannot prevail on this issue and also prove that the disclosures were intentional or reckless because the intentional or reckless disclosure of material nonpublic information by any AT&T employee would necessarily breach a duty of trust or confidence to the company. The disclosure can be one or the other, but not both. This inconsistency renders Regulation FD inoperable as a matter of law, thus there is no primary liability claim against AT&T and no viable aiding and abetting claim against the individual Defendants.

Very truly yours,


/s/ Richard S. Krumholz

---

[4] *See Dirks v. SEC*, 463 U.S. 646, 657 (1983) (quoting *Chiarella v. United States*, 445 U.S. 222, 233 (1980)).

[5] *See* Antony Page and Katy Yang, *Controlling Corporate Speech: Is Regulation Fair Disclosure Unconstitutional?*, 39 U.C. Davis L. Rev. 1, 8 (arguing that Regulation FD "should not survive a First Amendment challenge"); Susan B. Heymann, *Rethinking Regulation Fair Disclosure and Corporate Free Speech*, 36 Cardozo L. Rev. 1099, 1134 (concluding that "the constitutionality of [Regulation] FD is questionable at best"); Joseph A. Grundfest, *Regulation FD in the Age of Facebook and Twiter: Should the SEC Sue Netflix?* (Stanford Law Sch. Rock Ctr. For Corp. Governance, Working Paper Series No. 131, 2013) (arguing that "Regulation FD is vulnerable as an unconstitutional restraint on truthful speech, particularly as applied on the facts of this case").

NORTON ROSE FULBRIGHT

March 1, 2022
Page 4

cc (*via* ECF):

Alexander Mircea Vasilescu
Victor Edward Suthammanont
Jacob David Zetlin-Jones
Richard R. Best
Joy Guo
Randall Wade Jackson
Brittany Morgan Wagonheim
Peter Andrew Stokes
Seth Michael Kruglak
Jeffrey M Tillotson
Leslie C Thorne